**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAFAYETTE DIVISION**

| | |
|---|---|
| LIZA EDMOND, on Behalf of M.B. and X.B. | CIVIL ACTION NO. 16-0045 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| LAFAYETTE CONSOLIDATED GOVERNMENT, ET AL. | MAGISTRATE JUDGE HANNA |

**MEMORANDUM RULING**

Before the Court is a Motion for Summary Judgment (Record Document 40) filed by Defendants, Officer Melvin Riddell ("Officer Riddell"), Chief of Police Jim Craft ("Chief Craft"), and Lafayette Consolidated Government ("Lafayette"). Plaintiff Liza Edmond ("Edmond"), on behalf of Xzavien Broussard and Malik Broussard, opposed the Motion for Summary Judgment. See Record Document 44. For the reasons set forth below, the Defendants' Motion for Summary Judgment is **GRANTED** and all of Edmond's claims are **DISMISSED WITH PREJUDICE**.

**FACTUAL AND PROCEDURAL BACKGROUND**

Edmond, on behalf of Xzavien Broussard and Malik Broussard, filed the instant lawsuit pursuant to Title 42, United States Code, Section 1983 and Louisiana state law regarding two separate incidents occurring in October 2015. The defense filed Rule 12(b)(6) motions which were granted in part and denied in part. See Record Documents 13, 19, 23, 28, 29, and 30. At the conclusion of the Rule 12(b)(6) motion practice, Edmond's Section 1983 individual capacity claims against Chief Craft and Officer Riddell for excessive force remained and her municipal liability claim against Lafayette remained. Her state law claims of assault and battery, intentional infliction of emotional distress, and

negligent infliction of emotional distress likewise remained.

Defendants have now filed a Rule 56 dispositive motion seeking the dismissal of all of Edmond's remaining claims. See Record Document 40. Officer Riddell and Chief Craft have both invoked qualified immunity. See id. at 25-43. Defendants contend that Edmond's municipal liability claim against Lafayette fails because no constitutional rights were violated and, alternatively, no policy of Lafayette was the moving force behind the alleged constitutional violations. See id. at 43. Defendants seeks dismissal of Edmond's state law claims as a matter of law. See id. at 43-46.

First Incident

The first incident occurred between Xzavien Broussard and Officer Riddell, the School Resource Officer at Northside High School, during the week of October 5, 2015. See Record Document 22 at ¶ 4.[1] Xzavien Broussard was utilizing the restroom on the campus of Northside High School. See id. In his deposition, Xzavien Broussard admitted that he did not have the required "clipboard" pass to be excused from the classroom to go to the restroom. Record Document 40-4 at 32-33. Xzavien Broussard heard someone knock on the bathroom door and eventually learned it was Officer Riddell. See Record Document 22 at ¶ 5. Edmond alleges that as Xzavien Broussard opened the door to the restroom, Officer Riddell physically pulled Xzavien Broussard out of the restroom and pushed him into the hallway. See id. at ¶ 6. More specifically, in his deposition, Xzavien

---

[1] In his deposition, Xzavien Broussard could not recall the specific day or the month of this incident. See Record Document 40-4 at 4. Officer Riddell does not recall the incident with Xzavien Broussard. See Record Document 40-8 at 1. For purposes of the instant Memorandum Ruling, the Court will assume that the incident took place as described by Xzavien Broussard.

Broussard stated that as Officer Riddell pushed him, his chest hit the door in the stall. See Record Document 40-4 at 36. Xzavien Broussard stated in his deposition that he had one bruise above his nipple on his chest as a result of this incident. See id. at 18. He did not take any pictures of the bruise. See id. He did not report the bruising to anyone at school, but stated that he told his mother. See id. Edmond alleges that Officer Riddell used "unnecessary physical force" against Xzavien Broussard during this encounter. Record Document 22 at ¶¶ 6-7.

Second Incident

The second incident occurred on or about October 14, 2015 and is unrelated to the first incident. See Record Document 22 at ¶ 9. Portions of this incident were recorded on Northside High School's surveillance camera; yet, the quality of the video is questionable as the video skips during certain times of the incident. See Record Document 40-24 (Manual Attachment of October 14, 2015 Surveillance Video). Xzavien Broussard had been involved in a fight and was placed in the rear seat of Officer Riddell's police unit on the campus of Northside High School. See id. Malik Broussard, Xzavien Broussard's brother, left class without permission to locate his brother. See Record Document 40-14 at 3. Malik Broussard eventually saw Xzavien Broussard being placed in the police unit. See id. at 4. Malik Broussard stated in his deposition that he started crying and got upset when he saw Xzavien Broussard in the police unit. See id. As Officer Riddell was walking toward him, Malik Broussard questioned why Xzavien Broussard was being arrested and "threw [his] jacket" as he was coming towards the police car. Id. at 4, 8, 10. Malik Broussard described his interaction with Officer Riddell as follows:

A. He was like, "What you doing? Go to class. Get back to class." And

>       I'm like, "I just want to know what's going on with my little brother. I
>       want to find out what going on with my brother." And like he just kept
>       telling me, "Just go to class. Go to class."
>
>       . . .
>
> A.    After he asked me, I'm just standing there. Like I can't go to class
>       until I find out what's going on. I can't go to class.
>
> Q.    And so, what happened next?
>
> A.    That's when he swung me by my arm. He grabbed me by the jacket[2]
>       like this (indicating). And he had pushed - - like pushed me on the car
>       with force. And he was asking me like, "Do you want to be like your
>       little brother? Do you want to go with your little brother?"
>
>       . . .
>
> A:    After he had put me to the car, that's when he told me like, "Do you
>       want to be like your brother? Do you want to go with your brother?"
>       And I told him, "No, sir." And it's like that's when he let me go. So
>       like he let me go. . . . [H]e went that way and like I went to sit down .
>       . . outside. I had just sat down. Like I just started crying.

Id. at 9, 18.

Malik Broussard admitted that he was "really upset," "hollering," using a loud voice, and was visibly pulling his own hair during the encounter. Id. at 12-13. As to his distance from the car when Officer Riddell laid a hand on him, Malik Broussard testified:

> I would say a good bit of feet - - like a good bit of inches . . . - - like a good
> couple of inches away from the car.

Id. at 13. Edmond alleges that Officer Riddell used "excessive force" against Malik Broussard by recklessly and unnecessarily grabbing him and slamming him into the police

---

[2] Malik Broussard later clarified that he should have said his shirt, as he had thrown his jacket. See Record Document 40-14 at 10.

unit. Record Document 22 at ¶¶ 17-21.[3]

In his arrest report narrative, Officer Riddell stated that he was interrupted from securing the other student involved in the fight with Xzavien Broussard because Malik Broussard was irate while walking toward the police unit. See Record Document 40-9 at 21. Officer Riddell stated that he told Malik Broussard at least three times to return to class and he refused. See id. Officer Riddell further recalled that Malik Broussard had thrown his jacket and that he "placed Malik on the rear of [his] patrol unit." Id. In an Internal Affairs Recorded Statement, Officer Riddell described the encounter with Malik Broussard:

> Okay, so uh it was in the morning two students got into a fight. I was able to do an investigation and I began making arrest. So I handcuffed one subject. He was compliant. I put him in the back seat of my unit. As I'm going to finish the investigation and deal with the other subject I get stopped by Malik Broussard and he becomes irate from the beginning of the incident. . . . I'm like look go back to class. You can't help your brother right now. . . . He ignored me. He walked to the back of my police unit. He's at this time he's pulling his hair and screaming. . . . I told him several times to back away from my car, go to class. He didn't listen. So at this time I got him to the

---

[3]In her complaint, Edmond further alleges that Officer Riddell illegally and unlawfully seized Malik Broussard. See Record Document 22 at ¶¶ 19, 27. There is no factual allegation of the unlawful arrest of either Xzavien Broussard or Malik Broussard in the Amended Complaint. See id.
  On January 4, 2018, the parties filed their proposed Pretrial Order. See Record Document 49. Under Claims and Responses, the proposed Pretrial Order provides:

**Plaintiff's Claims**

Plaintiff, Liza Edmond, on behalf of Malik and Xzavien Broussard, claim that Officer Melvin Riddell utilized excessive force against them by forcing Plaintiff out of a bathroom and utilizing excessive enforce in accomplishing this task and also by proceeding towards the Plaintiff and slamming the Plaintiff against his vehicle causing injuries.

Record Document 49 at 2. Thus, this Court concludes that Edmond has abandoned the unlawful seizure claim as to Malik Broussard. See Valley Ranch Dev. Co. v. F.D.I.C., 960 F.2d 550, 554 (5th Cir. 1992).

> back of my police unit, closer to the rear light and I tired to reason with him cause I understand he was outta control and I don't believe in just to arrest everybody because they're having a bad day. So I asked him I said well so you wanna go to jail with him. He said no. At the time the school safety officer, Paul Taylor, he's standing in the front of my unit. I said Paul Taylor can you assist me with him.
>
> . . .
>
> I was able to gain control with him by grabbing the back of his pants and pushing the back of his torso to lean on the back of my hood.

Record Document 40-10 at 3-4, 5.

Officer Paul Taylor, the school safety officer at Northside High School, likewise recalled Malik Broussard screaming, hollering, and crying and going "to the [police] car to open the car door." Record Document 40-18 at 8, 44. He testified that Officer Riddell physically put his hands on Malik Broussard and applied him on the car and tried to get him to settle down. See id. at 8. Officer Paul Taylor further stated in his deposition that he did not believe Officer Riddell used excessive force and that Malik Broussard could have been validly arrested for interfering with an arrest. See id. at 11. While the surveillance video does skip, it does show that Malik Broussard approached the police unit and was ultimately placed against Officer Riddell's car for less than five seconds. See Record Document 40-24.

As to injuries, Malik Broussard stated that he felt a "little like sharp little pain" in his leg as he hit the car. Id. at 19. He stated that it was nothing serious, just a "little pinch," and "no pain right then and there." Id. He had no bruising on his leg. See id. at 30. Malik Broussard did go to the emergency room the day of the incident because his leg hurt. See id. at 29, 33. He was treated and released. See id. at 29. Malik Broussard stated that he did not tell the ER doctor about leg pain, but rather about back pain. See id. at 34-35. He

stated he did not mention the leg pain because he thought it would go away.  See id.  He stated that he did not see a counselor, psychiatrist, psychologist, or any other mental health professional with regards to this incident.  See id. at 37.

The medical records from Malik Broussard's October 14, 2015 emergency room visit indicate lumbar pain and extremity pain in the right leg.  See Record Document 40-15 at 3-4.  Malik Broussard was diagnosed with sciatica and prescribed oral steroids, an anti-inflammatory, and a muscle relaxer.  See id. at 8-10.

On October 27, 2015, Malik Broussard went to Moss Street KidMed, complaining of lower back pain and right leg pain.  See Record Document 40-16 at 2.  He was prescribed physical therapy and ibuprofen and instructed to limit his activities for fourteen days.  See id. at 2-4.

On November 16, 2015, Malik Broussard saw Dr. Keith Mack, complaining of right leg pain since "his right lower extremity hit the police car."  Record Document 40-17 at 2.  A physical examination of the right lower extremity revealed pain in the thigh area (a burning type sensation); no radiating type symptoms; no numbness or tingling; and no bruising, heat, swelling, or discoloration or no bony abnormalities.  See id. at 3.  Malik Broussard was discharged on April 25, 2016, at which time he reported to the doctor that his right lower extremity had improved to the point where it no longer bothered him and has not bothered him in the past several weeks.  See id. at 10.

## LAW AND ANALYSIS

**I.      Summary Judgment Standard.**

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure when "there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law." Quality Infusion Care, Inc. v. Health Care Serv. Corp., 628 F.3d 725, 728 (5th Cir.2010). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party." See id. "Rule 56[(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Patrick v. Ridge, 394 F.3d 311, 315 (5th Cir.2004). If the movant demonstrates the absence of a genuine dispute of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." Gen. Universal Sys., Inc. v. Lee, 379 F.3d 131, 141 (5th Cir.2004). A nonmovant cannot meet the burden of proving that a genuine issue of material fact exists by providing only "some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994). Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, then summary judgment should be granted. See Boudreaux v. Swift Transp. Co., 402 F.3d 536, 540 (5th Cir.2005).

In reviewing a motion for summary judgment, the court is to view "the facts and inferences to be drawn therefrom in the light most favorable to the non-moving party." Tubos de Acero de Mexico, S.A. v. Am. Int'l Inv. Corp., Inc., 292 F.3d 471, 478 (5th Cir. 2002); see also Harris v. Serpas, 745 F.3d 767, 771 (5th Cir. 2014). However, when there is video evidence available in the record, the court is not bound to adopt the nonmoving party's version of the facts if it is contradicted by the record, but rather should "review[ ] the

facts in the light depicted by the videotape." Scott v. Harris, 550 U.S. 372, 381, 127 S.Ct. 1769, 1776 (2007); see also Carnaby v. City of Houston, 636 F.3d 183, 187 (5th Cir.2011) ("Although we review evidence in the light most favorable to the nonmoving party, we assign greater weight, even at the summary judgment stage, to the facts evident from video recordings taken at the scene."). Further, the court should not, in the absence of any proof, presume that the nonmoving party could or would prove the necessary facts. See Little, 37 F.3d at 1075.

## II. Qualified Immunity.

"Qualified immunity protects officers from suit unless their conduct violates a clearly established constitutional right." Mace v. City of Palestine, 333 F.3d 621, 623 (5th Cir. 2003). Once the defendant raises the qualified immunity defense, "the burden shifts to the plaintiff to rebut this defense by establishing that the official's allegedly wrongful conduct violated clearly established law." Brumfield v. Hollins, 551 F.3d 322, 326 (5th Cir. 2008). "Claims that law enforcement officers used excessive force are analyzed under the Fourth Amendment." Mace, 333 F.3d at 624, citing Graham v. Connor, 490 U.S. 386, 395, 109 S.Ct. 1865, 1871 (1989).

The court applies a two-step analysis to determine whether a defendant is entitled to summary judgment on the basis of qualified immunity. See Freeman v. Gore, 483 F.3d 404, 410 (5th Cir. 2007). First, the court must determine whether the defendant violated the plaintiff's constitutional rights. See id. "If so, [the court] next consider[s] whether the defendant's actions were objectively unreasonable in light of clearly established law at the time of the conduct in question." Id. at 410-411. Even on summary judgment, courts can not ignore that qualified immunity "gives ample room for mistaken judgments by protecting

all but the plainly incompetent or those who knowingly violate the law." Poole v. City of Shreveport, 691 F.3d 624, 627 (5th Cir. 2012).

## III. Section 1983 Claims Against Officer Riddell.

Edmond has alleged that Officer Riddell used excessive force against Xzavien Broussard and Malik Broussard. The Court will analyze Edmond's Section 1983 excessive force claims under the Fourth Amendment. See Curran v. Aleshire, 800 F.3d 656 (5th Cir. 2015). The Court must also consider additional factors when applying Fourth Amendment standards in school settings. See Thomas v. City of New Orleans, 883 F.Supp.2d 669, 687 (E.D. La. 2012), *citing* Milligan v. City of Slidell, 226 F.3d 652, 654-655 (5th Cir.2000) ("But '[t]he [Supreme] Court [has] indicated that although the Fourth Amendment applies in schools, the nature of those rights is what is appropriate for children in school.'"). "Fourth Amendment rights . . . are different in public schools than elsewhere; the 'reasonableness' inquiry cannot disregard the schools' custodial and tutelary responsibility for children." Thomas, 883 F.Supp.2d at 687, *citing* Vernonia Sch. Dist. 47J v. Acton, 515 U.S. 646, 656, 115 S.Ct. 2386 (1995). Generally, when a plaintiff brings a claim under federal law contending that a police officer used excessive force in violation of the Fourth Amendment, the plaintiff show that he suffered "(1) an injury that (2) resulted directly and only from the use of force that was excessive to the need and that (3) the force was objectively unreasonable." Goodson v. City of Corpus Christi, 202 F.3d 730, 740 (5th Cir.2000). The injury must be more than *de minimis*, evaluated in the context in which the force was deployed. See Tarver v. City of Edna, 410 F.3d 745, 751-752 (5th Cir.2005); Kennedy v. City of Shreveport, No. CIV.A. 07-1049, 2008 WL 2437043, at *3 (W.D. La. June 13, 2008). Only substantial psychological injuries are sufficient to satisfy the injury element of

a claim for excessive force under the Fourth Amendment. See Flores v. City of Palacios, 381 F.3d 391, 397-398 (5th Cir.2004).

Officer Riddell has asserted the defense of qualified immunity. Once a defendant has invoked the defense of qualified immunity, the burden shifts to the plaintiff to show that the defense is unavailable. See Collier v. Montgomery, 569 F.3d 214, 217-218 (5th Cir.2009) ("Although nominally an affirmative defense, the plaintiff has the burden to negate the assertion of qualified immunity once properly raised"); see also McClendon v. City of Columbia, 305 F.3d 314, 323 (5th Cir.2002).

Xzavien Broussard

This Court will assume for purposes of the instant ruling that Officer Riddell did push Xzavien Broussard in the bathroom at Northside High School. Even with that assumption, the summary judgment record does not support a constitutional violation, as Xzavien Broussard's injuries were, at most, *de minimis*. By his own admission, Xzavien Broussard stated that he had a bruise on his chest. See Record Document 40-4 at 18. Xzavien Broussard did not seek medical attention for any chest pain until after he got into a fight with another student on October 14, 2015. See id. at 20-23. During such fight, the other student sat on Xzavien Broussard's chest. See id. at 21. Medical records from Keith R. Mack, M.D. further provide:

> This 16-year-old male presents to the clinic on 11/16/2015 accompanied by his mother reporting that approximately 6 weeks ago he was the victim of police brutality. The patient reports he was in the bathroom at school when the police officer asked the patient what he was doing and asked that he return back to class. When the patient started walking back to class, the police officer pushed him in the back and neck area apparently trying to push him along back to class. ***The patient reports that he did not suffer any injuries from this altercation with the police officer.*** A week later the patient was involved in an altercation with another student at school. He was

> placed on the ground and on the table and did suffer some hits to the chest, and he reports this is when his chest began to bother him.

Record Document 40-7 at 2 (emphasis added). In his deposition, Xzavien Broussard testified that he is "nervous" that Officer Riddell could "do it again" when he thinks about the bathroom incident. See Record Document 40-4 at 32. He also stated that he could not remember if he had ever seen a doctor for any kind of depression, sought any kind of counseling for anything to do with mental health, or ever gone to a doctor because he was having trouble dealing with things in his life. See id. at 27.

In Campbell v. McAlister, 162 F.3d 94, 1998 WL 770706, *4 (5th Cir. 1998), the Fifth Circuit stated that "minor bruising as a result of school discipline has never been sufficient harm to establish a constitutional injury." Moreover, scratches, bruises, and soreness are generally held to be nothing more than *de minimis* injuries and are not enough to raise a genuine issue of material fact to support the first element of an excessive force claim. See Houston-Hines v. Houston Indep. Sch. Dist., No. 04-3539, 2006 WL 870459, *5 (S.D.Tex. April 5, 2006). "Only substantial psychological injuries are sufficient to satisfy the injury element of a [Section] 1983 claim for excessive force under the Fourth Amendment." Martin v. City of Alexandria Municipality Police Dep't, No. CIV A 03-1282, 2005 WL 4909292, at *11 (W.D. La. Sept. 16, 2005), *aff'd sub nom.* Martin v. City of Alexandria, 191 F. App'x 272 (5th Cir. 2006), *citing* Flores v. City of Palacios, 381 F.3d 391, 400-401 (5th Cir. 2004).

The Court finds that Officer Riddell is entitled to qualified immunity, as the summary judgment record does not show that Officer Riddell's conduct violated Xzavien Broussard's right to be free from excessive force under the Fourth Amendment and considering the

school setting. The claimed bruise on Xzavien Broussard's chest is nothing more than a *de minimis* injury. Xzavien Broussard's nervousness is likewise not a substantial psychological injury. Xzavien Broussard did not receive more than *de minimis* injuries as a result of the bathroom incident; thus, Edmond has failed to raise a genuine dispute of material fact that Officer Riddell acted unreasonably and violated his constitutional right to be free from excessive force.

Malik Broussard

Even if this Court were to assume the first prong of the qualified immunity analysis, that is, Officer Riddell violated Malik Broussard's constitutional rights,[4] this Court holds that Officer Riddell's actions were objectively reasonable in light of clearly established law at the time of the conduct in question. See Freeman, 483 F.3d at 410. It is uncontested that at the time of the incident involving Malik Broussard, Officer Riddell was in the middle of detaining and arresting two students involved in a fight. There is no dispute that Malik Broussard was visibly upset and ignored verbal orders, all while Officer Riddell was in the middle of an ongoing investigation. Officer Riddell's use of force, more specifically a soft empty hand control method, to restrain a disruptive student who failed to follow orders and was interfering with a criminal investigation was reasonable under the circumstances and was not a use of force that was excessive to the need as required. Moreover, this is not an area of clearly established law, as noted by the Thomas court:

> If the Fifth Circuit has declined to recognize school children's claims under
> the Fourth Amendment for school officials' use of restraining techniques, it

---

[4]While there was a diagnosis of sciatica, the medical records fail to note any objective signs of injury. Malik Broussard's own deposition testimony indicates that his injuries were *de minimis* and thus insufficient to constitute a constitutional violation.

> seems that school children's claims against police officers responding to a school's request for back-up cannot be analyzed in a way that is divorced from the school context. This is particularly so when Fourth Amendment reasonableness analyses are so context-driven. The fact that this Court even has to speculate as to what standard to apply to the police officers' conduct toward a student here in order to determine if their conduct was constitutionally permissible seems determinative of the qualified immunity analysis: clearly established law does not put the constitutionality of the police officers' conduct beyond debate.

Thomas, 883 F.Supp.2d at 688. Thus, Officer Riddell's use of force to gain control of the situation and restrain Malik Broussard was objectively reasonable and was not a violation of clearly established rights.

**IV.  Section 1983 Claims Against Chief Craft.**

As to Chief Craft, Edmond alleges that he implemented unconstitutional policies that causally resulted in constitutional injuries to both Xzavien Broussard and Malik Broussard. See Record Document 22 at ¶¶ 28-41. More specifically, Edmond maintains that Chief Craft failed to adequately train and supervise his employees, namely Officer Riddell, in various ways regarding excessive force and failed to discipline Officer Riddell for his reckless behavior. See id. at ¶ 30. Edmond further alleges that Chief Craft was deliberately indifferent as to the reckless behavior of Officer Riddell. See id. at ¶¶ 32, 35.

Supervisory officials, such as Chief Craft, may not be held liable under Section 1983 for the actions of subordinates on any vicarious liability or respondeat superior theories. See Estate of Davis ex rel. McCully v. City of North Richland Hills, 406 F.3d 375, 381 (5th Cir.2005). Instead, Edmond must show that the conduct of a supervisor such as Chief Craft denied the constitutional rights of Xzavien Broussard and Malik Broussard. See id. This Court has previously held that no constitutional violations occurred in the instant matter. Hence, there is no underlying constitutional violation to which any alleged

unconstitutional policy; failure to train; failure to discipline; or deliberate indifference could be causally linked. See Kennedy, 2008 WL 2437043, at *6 ("As to the second prong, Kennedy has not shown an underlying constitutional violation to which any the failure to train, monitor, supervise, or punish could be causally linked."); Whitley v. Hanna, 726 F.3d 631, 648 (5th Cir. 2013) ("All of Whitley's inadequate supervision, failure to train, and policy, practice, or custom claims fail without an underlying constitutional violation."); Billizone v. Jefferson Par. Corr. Ctr., No. CIV.A. 14-1263-SS, 2014 WL 7139636, at *5 (E.D. La. Dec. 15, 2014) ("Because there was no underlying constitutional violation, the Court must dismiss any claims asserted against Llovet in her individual capacity based either on her own actions or on her purported failure to properly supervise or train her subordinates."). Accordingly, Edmond's Section 1983 claims against Chief Craft must be dismissed.

**V.  Section 1983 Claims Against Lafayette.**

Edmond has alleged a Section 1983 municipal liability claim against Lafayette based on unconstitutional practices, policies, customs and usages. See Record Document 22 at ¶¶ 28-40. Under Section 1983, municipal liability generally requires proof of three elements: (1) a policymaker; (2) an official policy; and (3) a violation of constitutional rights whose moving force is the policy or custom. See Piotrowski v. City of Houston, 237 F.3d 567, 578 (5th Cir.2001), citing Monell v. Dep't of Social Servs., 436 U.S. 658, 98 S.Ct. 2018 (1978). Municipal liability shall not be predicated on respondeat superior. See id. "The three attribution principles identified here - a policymaker, an official policy and the 'moving force' of the policy - are necessary to distinguish individual violations perpetrated by local government employees from those that can be fairly identified as actions of the

government itself." Id.

Edmond's Monell claim against Lafayette fails because there was no underlying violation of the constitutional rights of Xzavien Broussard and Malik Broussard. See Kennedy, 2008 WL 2437043, at *5. As set forth previously in the Court's qualified immunity analysis, Edmond failed to demonstrate that Officer Riddell violated clearly established constitutional rights. Thus, there is an absence of an underlying constitutional violation and Edmond's Section 1983 claim against Lafayette must be dismissed.

## VI. State Law Claims.

Edmond has also asserted state law claims of assault and battery, intentional infliction of emotional distress ("IIED"), and negligent infliction of emotional distress ("NIED"). These state law claims arise from the excessive force allegations relating to the two October 2015 incidents.

"Under Louisiana law, the same standard is used in analyzing a state law claim of excessive force as a constitutional claim, namely reasonableness under the circumstances." Reneau v. City of New Orleans, No. 03-1410, 2004 WL 1497711, *4 (E.D.La. July 2, 2004), citing Kyle v. City of New Orleans, 353 So.2d 969, 973 (La.1977); Mathieu v. Imperial Toy Corp., 646 So.2d 318, 323 (La .1994). The Court has granted Officer Riddell qualified immunity. As the Court has found that Officer Riddell acted reasonably under the circumstances, Edmond's state law assault and battery claim must fail as well. See id.

To recover for IIED, a plaintiff must establish (1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that

severe emotional distress would be certain or substantially certain to result from his conduct. See Nicholas v. Allstate Ins. Co., 765 So.2d 1017, 1022 (La. 2000). The Louisiana Supreme Court in White v. Monsanto Co. stated:

> The conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. Persons must necessarily be expected to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. Not every verbal encounter may be converted into a tort; on the contrary, "some safety valve must be left through which irascible tempers may blow off relatively harmless steam."

White v. Monsanto Co., 585 So.2d 1205, 1209 (La. 1991), quoting Restatement (Second) of Torts § 46 (1965). Furthermore, the court in Nicholas determined that it was not enough that a defendant acted with an intent which was tortious or even criminal in order to prove that the conduct was extreme and outrageous. See Nicholas, 765 So.2d at 1022. Here, in opposition to the defense Motion for Summary Judgment, Edmond argues that "a reasonable juror could conclude that Officer Riddell's actions against both [Xzavien Broussard and Malik Broussard] were extreme and outrageous." Record Document 44 at 18. This is insufficient to survive summary judgment. Moreover, this Court held *supra* that Officer Riddell's conduct was reasonable, not extreme and outrageous. Accordingly, Edmond's IIED claim must be dismissed.

To recover for NIED, there must be proof that the defendant violated some legal duty owed to the plaintiff. See Haith v. City of Shreveport, No. 03-CV-2128, 2005 WL 2140583, at *6 (W.D. La. Sept. 1, 2005). The plaintiff must also meet the heavy burden of proving outrageous conduct by the defendant. See id. at *6. As indicated *supra*, the summary judgment record is devoid of facts showing that Officer Riddell's conduct was

outrageous. Moreover, Edmond's negligence claim is undermined because the Court earlier found Officer Riddell's conduct reasonable. See Roten v. City of Minden, No. 16-CV-0381, 2017 WL 1398655, at *8 (W.D. La. Apr. 18, 2017) ("The focus of the qualified immunity inquiry is reasonableness. By finding the actions of Engi and Young to be reasonable under the qualified immunity analysis, Roten's state law negligence claims are undermined."). Therefore, Edmond's NIED claim must be dismissed.

## CONCLUSION

The Motion for Summary Judgment (Record Document 40) filed by Defendants is hereby **GRANTED**. Officer Riddell is entitled to qualified immunity as to Edmond's Section 1983 excessive force claims. Edmond's Section 1983 claim against Chief Craft and Lafayette fails because there is no underlying constitutional violation. Edmond's state law claims fails as a matter of law. All of Edmond's claims are hereby **DISMISSED WITH PREJUDICE**.

A Judgment consistent with the terms of the instant Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 9th day of January, 2018.

_____
S. MAURICE HICKS, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT